UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x

In re

                                              Chapter 7

      ROBERT DABROWSKI,                    Case No. 99-B-44654 (REG)

      Debtor.

-------------------------------------------------------------x

DECISION ON MOTION FOR CONSTRUCTION OF
DISCHARGE ORDER, FINDING OF CONTEMPT,
ACCOUNTING, AND RELATED RELIEF

APPEARANCES:

Robert Grimble, Esq.
299 Broadway, Suite 1010
New York, New York 10007

Meryl L. Wenig, Esq.
189 Montague Street, Suite 520
Brooklyn, New York 11201

BEFORE:             ROBERT E. GERBER
                        UNITED STATES BANKRUPTCY JUDGE

<u>Introduction and Summary</u>

Robert Dabrowski ("Debtor"), the debtor in a previously closed chapter 7 case in this Court, is the tenant in a rent-regulated Apartment in New York City ("Apartment"). As described more fully below, he and Pari Dulac, the landlord of the Apartment in which the Debtor lives ("Landlord"), differed over the maximum collectible rent and the rent regulation regime that was applicable to his Apartment, and litigated extensively, before the filing of the Debtor's bankruptcy case, with respect to those issues in the regulatory agency with jurisdiction over such matters, the Office of Rent Administration of New York State's Division of Housing and Community Renewal ("DHCR"). After administrative proceedings lasting 10 years, the DHCR ruled that the Debtor's Apartment was subject to "Rent Stabilization" (rather than "Rent Control," an alternative regulatory regime under which the rent would be lower), and that the Debtor owed the Landlord retroactive additional rent of approximately $42,000 (the "Retroactive Rent").

With the $42,000 in Retroactive Rent due to the Landlord, the Debtor then filed a petition for bankruptcy relief in this Court. His chapter 7 trustee took no action to either assume or reject the lease, and the Landlord, although given notice of the Debtor's chapter 7 filing, took no action in the case. At the conclusion of the Debtor's bankruptcy case, an order was duly entered by Judge Garrity of this Court (the "Discharge Order") discharging the Debtor from all of his pre-petition debts -- including, the Debtor argues, the Retroactive Rent.

The Landlord thereafter commenced a "summary non-payment proceeding" in the New York City Civil Court's Housing Part ("Housing Court") seeking possession of the Apartment and the arguably discharged rent; her papers sought both eviction and a

money judgment for the unpaid Retroactive Rent. In a decision now under appeal in the state courts,[1] a New York City Housing Court Judge granted summary judgment in the Landlord's favor to the extent of dismissing the bankruptcy defense raised by the Debtor, ruling that the debt had not been discharged. After unsuccessfully moving to reargue, the Debtor duly appealed the Housing Court decision, and then sought relief here.

Having also moved for an order reopening his case,[2] the Debtor moves for an order:

(a) clarifying the Discharge Order insofar as it related to the Retroactive Rent;

(b) holding the Landlord in civil and/or criminal contempt for taking actions prohibited or said to be prohibited by the Discharge Order, in connection with the commencement and prosecution of the summary non-payment proceeding;

(c) setting the matter down for an evidentiary hearing on any issues of fact;

(d) awarding costs and legal fees incurred in relation to the motion;

(e) awarding damages arising from the alleged failure to comply with the Discharge Order;

(f) directing the Landlord to render an accounting as to any sums paid post-petition by the Debtor that were applied to any pre-petition debts; and

---

[1]    By agreement between the Debtor and Landlord, that appeal is "on hold" pending a decision by this Court on the motion.

[2]    That aspect of the relief requested by the Debtor, which was unopposed, has been granted by the Court.

(g) granting any further relief as might be just to enforce the Discharge Order.

The motion is granted in part and denied in part,[3] as set forth more fully below.

Based on the above facts, and those stated in more detail below, the Debtor argues that the Retroactive Rent was discharged, just like any other pre-petition debt, and that the Landlord's nonpayment proceeding, and/or the relief sought in it -- seeking a money judgment for that debt, along with possession -- was violative of the Discharge Order and the injunction against such actions under Bankruptcy Code section 524. In addition to asking this Court to clarify the Discharge Order to explicitly say that any request for the Retroactive Rent would be violative of the Discharge Order, the Landlord seeks to hold the Landlord in contempt for that violation.

In opposition, the Landlord argues that the Housing Court was correct in determining that the DHCR Debt was not discharged. But she also raises a significant threshold issue, articulated as one of res judicata, as to whether this Court can determine the discharge issue now that the Housing Court has done so.

For the reasons described below, with respect to the most significant of the issues:

(a) This Court is not bound by the judgment of the Housing Court with respect to the bankruptcy discharge issue (which, as noted below, unfortunately is erroneous), as that judgment is void under Bankruptcy Code section 524(a)(1) and the caselaw thereunder;

---

[3] Part (a) is granted and Part (f) is granted in substance, and the desired clarification, and the principles applicable to the accounting, are set forth below. Parts (b), (d) and (e) are denied on the merits. Parts (c) and (g) are denied, other than on the merits, as unnecessary and/or inappropriate for this Court to decide.

(b) The "deemed rejection" under Bankruptcy Code section 365(d)(1) of the Debtor's "lease" (or, more accurately, the bundle of statutory and contractual rights and obligations associated with the Debtor's occupancy of the Apartment), relied on by the Housing Court, is not determinative of the discharge issue;

(c) The $42,000 debt was, in fact (contrary to the determination of the Housing Court), discharged, under Bankruptcy Code section 727(b), as implemented under Bankruptcy Code section 524(a) and the Discharge Order, and the Landlord accordingly may not sue for the Retroactive Rent;

(d) The Landlord nevertheless may proceed, *in rem*, to recover possession of the Apartment, if state law permits recovery of possession of the Apartment as a *consequence* of the nonpayment of the Retroactive Rent; this Court does not regard it as violative of the Discharge Order if any of the Landlord's remedies are limited to proceeding *in rem* (such as proceeding solely to recover possession, or bringing an action in the nature of ejectment), or if the Landlord, in any subsequent proceedings in state court (including, if such is possible, in summary proceedings in the Housing Court), clearly, unequivocally, and irrevocably renounces any entitlement to any money damages award;

(e) Once the federal law defining the nature and scope of the discharge is clarified, the state courts are better suited to determine the parties' rights and responsibilities incident to the Debtor's continuing occupancy of the Apartment. Assuming (though this may be debatable) that this Court has subject matter jurisdiction over the determination of the rights of the Debtor and the Landlord with respect to the Apartment once the coverage of the Discharge Order is

determined, this Court believes that the state courts provide the more appropriate forum to determine, as one or more questions of state law, whether the Debtor may occupy the Apartment if he pays only the rent accruing after his bankruptcy filing, and chooses (as his right) not to pay the discharged Retroactive Rent. They also are better suited than this Court to determine what state court procedural vehicles are available to the Landlord to obtain any necessary rulings, in light of this Court's ruling that she can proceed in rem for possession but must disclaim entitlement to a money judgment award. Particularly in light of the Debtor's understandably limited request for relief -- construction and enforcement of the Discharge Order -- this Court does not regard any of those state law issues to be properly before it, and to the extent any might be deemed to be so, it abstains from considering them.

Facts

Except for matters irrelevant to determination of the motion, the facts are not in dispute. [4] The Debtor occupies the Apartment, a 3-bedroom unit, #2R, at 24 Minetta Lane, in the Greenwich Village section of Manhattan, New York City. As gleaned from the decision of the DHCR that preceded the Debtor's bankruptcy filing, [5] the Debtor commenced occupancy of the Apartment in 1966 pursuant to a lease, and continued to receive renewal leases every two years [6] for part, but less than all, of the duration of his occupancy. The DHCR found that the last lease, for a duration of two years, ran from

---

[4]     The Court believes that the combination of proof by affidavit, exhibits, and counsel's undisputed representations results in there being no material disputed issues of fact necessary to determine the motion. Accordingly, there is no need to take oral testimony.

[5]     Grimble Aff. Exh. C.

[6]     *Id.* at 2.

May 1, 1986 through April 30, 1988.[7]  The DHCR further found that the Debtor and the

Landlord did not enter into any lease agreements after April 30, 1988.[8]

In July 1988, the Debtor commenced proceedings with the DHCR seeking a

determination as to the maximum collectible rent and his rent regulation status.

Thereafter, the Landlord responded and filed related petitions and requests for relief.[9]

The Debtor generally contended that his Apartment was subject to "rent control," rather

than "rent stabilization."  While these two alternative regimes have the common effect of

limiting the amount that a landlord can charge a tenant for continued occupancy of an

Apartment, they differ in their mechanics and, at least frequently, in the maximum

collectible rent.  Rent control does not require or contemplate a current written and

signed lease.  In this way, the rent-controlled tenancy survives the lease term of the

original lease instrument (and any written renewals thereof) and becomes a so-called

"statutory" tenancy.  *See Resolution Trust Corp. v. Diamond ("Diamond I"),* 18 F.3d

111, 114 (2d Cir. 1994) (describing the two programs' operation from a federal law

perspective), *vacated and remanded sub nom. Solomon v. Resolution Trust Corp.,*

513 U.S. 801, 115 S.Ct. 43, 130 L.Ed.2d 5 (1994), *on remand*, 45 F.3d 665 (2d Cir. 1995)

*("Diamond II"*).  The maximum rent for each rent-controlled property is set by an

administrative board on a biennial basis; upon certain enumerated contingencies, such as

an increase in operating expenses, a landlord may petition the rent control board for an

extraordinary increase.  *See id*. at 114.  So long as the tenant pays the regulated rent, and

---

[7]     *Id.* at 9.

[8]     *Id.*

[9]     Landlord acquired the building in the late 1980's, and also attempted to seek possession of the
        Apartment for her own use.  It appears that she was unsuccessful in this regard, and such efforts
        are in any event not relevant to the discharge issues before the Court here.

otherwise is not in breach of tenant obligations, the landlord may not evict. *See id.* at 119.[10]

Unlike rent control, rent stabilization contemplates a current written lease, and requires the landlord to offer a renewal lease to the tenant before the end of each lease term. *See id.* at 114. New York City's rent guidelines board regularly fixes the maximum rent increase for one-year and two-year leases, the allowable percentage increase being based in part on market conditions. *See id.* As long as the tenant continues to pay the rent, the tenant cannot be denied a renewal lease or be evicted except on specified grounds, including the owner's desire to take possession for the owner's own use as a primary residence and certain wrongful acts by the tenant. *See id.* at 119. Though the evidentiary basis for this in the record is thin, this Court left the hearing on the motion with the understanding that rents for Apartments under "rent control" are at least typically materially lower than rents for comparable Apartments under "rent stabilization." Certainly this case is consistent with that understanding.

With this by way of background, the Debtor and the Landlord litigated vigorously and at length over whether the Debtor's Apartment was subject to "rent control" or "rent stabilization." The Debtor was successful in the early stages of that litigation, and in 1989 the DHCR ruled that the Debtor's Apartment was subject to "rent control" and not "rent stabilization," and that the maximum monthly rent was $30.70 per month, effective August 1, 1970.[11] However, in 1998, after what was by then 10 years of administrative

---

[10]    The differences help explain why the litigation was so vigorous, although, for the reasons discussed below, this Court does not believe that the choice of regulatory regime, or the characteristics of either: (a) determines whether there was an executory contract that could be deemed to have been rejected, or (b) assuming that there was a "deemed rejection," affects the discharge issue.

[11]    Grimble Aff. Exh. C (DHCR Decision) at 1.

proceedings, the DHCR determined that the Debtor's Apartment was subject to "rent stabilization" and not "rent control," and awarded the Landlord the back rent corresponding to the difference between the rent that had been collected and the rent that would have been collectible under rent stabilization, "as if the parties had entered into two-year renewal leases starting from May 1, 1988 through the issuance date of this order."[12]

The Retroactive Rent, according to the Debtor, was approximately $42,000.[13] Thereafter, the Landlord sought what may be the exact amount of the Retroactive Rent, $41,894.00, and, by reason of further accruals and/or different computations, additional sums as well.[14] The DHCR provided that the Debtor could pay off the Retroactive Rent in monthly installments over 36 months.[15] In response to the DHCR decision, the Debtor filed an Article 78 proceeding for judicial review of the administrative determination, but was unsuccessful.

In May 1999, the Landlord commenced the first of two nonpayment summary proceedings in Housing Court that are relevant to this case, seeking payment of the Retroactive Rent and possession of the premises. The proceeding was adjourned by stipulation. Before any material further proceedings in the Housing Court took place, the Debtor filed for relief in this Court, under chapter 7 of the Code, on July 30, 1999. The imposition of the automatic stay under Bankruptcy Code section 362 caused that nonpayment proceeding in the Housing Court to be marked "off calendar."

---

[12]      *Id.* at 9.

[13]      Grimble Aff. ¶ 16.  Indeed, this amount might have been higher, but for the statute of limitations.

[14]      Grimble Aff. Exh. G.

[15]      Grimble Aff. Exh. C (DHCR Decision) at 10.

In his Schedule of Liabilities accompanying his chapter 7 filing (specifically, Schedule F, showing his unsecured debts), the Debtor listed debts in the aggregate amount of $231,170. That included the Retroactive Rent, scheduled in the amount of $42,000 as owed to the Landlord, who was listed by name and, so far as the Court can determine, the proper address. In his petition, the Debtor stated that he estimated that after any exempt property that he held was excluded and administrative expenses were paid, there would be no funds available for distribution to creditors. The Chapter 7 Trustee came to the same conclusion, and this thus was a "no asset" case. The Landlord was inactive in the bankruptcy. She did not file a proof of claim, nor did she attend the section 341 meeting, file any motion objecting to discharge in general, or object to the dischargeability of the Retroactive Rent.[16]

At the conclusion of his chapter 7 case, the Debtor obtained a discharge of all his dischargeable pre-petition debts by the Discharge Order granted by the Hon. James Garrity (to whom this case previously was assigned) dated November 23, 1999. After providing that "no order denying a discharge has been granted," the Discharge Order went on to provide:

> 1. The Debtor is released from all dischargeable debts.

---

[16] The Court further finds as a fact, however, that it would be a mistake to conclude very much from this. This was a "no-asset" case; there would be no funds for distribution to unsecured creditors, like the Landlord. In a no-asset case, where (as here, s*ee* Docket #5) a "notice of no distribution" is issued, filing of proofs of claim would be pointless, and as a result of the interplay between Rules 2002(e) and 3002(c)(5) of the Federal Rules of Bankruptcy Procedure ("Fed.R.Bankr.P."), there would be no deadline for filing proofs of claim until and unless creditors were notified that funds would be available for distribution. *See, e.g., In re Cruz,* 254 B.R. 801, 806 & n.7 (Bankr. S.D.N.Y. 2000) (Gonzalez, J.) (explaining the practice in a "no asset" case). Similarly, the Court finds it difficult to see why the Landlord might reasonably be expected to have taken any of the other enumerated acts either, and considers it inappropriate to fault her for, or draw inferences from, her failure to do so.

2.  Any judgment not obtained in this court is null
and void as to the personal liability of the Debtor(s)
regarding the following:

> (a) debts dischargeable under 11 U.S.C.
> § 523(a);

> (b) debts alleged to be excepted from
> discharge under 11 U.S.C.
> § 523(a)(2),(4),(6) or (15) unless determined
> by this court to be nondischargeable;

> (c) debts determined by this court to be
> discharged.

3. All creditors whose debts are discharged by this
order or whose judgments are declared null and
void in 2 above, are enjoined from instituting or
continuing any action, employing any process or
engaging in any act to collect such debts as personal
liabilities of the Debtor(s).

(Grimble Aff. Exh. B).  The Discharge Order further provided for the closing of the

Debtor's bankruptcy case, and that closing was docketed the same day.[17]

On or about April 19, 2000, the Landlord brought a second nonpayment

proceeding in Housing Court.  Before she did so, she served the Debtor, on March 27,

2000, with a "Notice to Tenant" setting forth rent obligations that were unpaid, in varying

amounts said to have accrued in the period from May 1993 through June 1999.  The

Notice to Tenant said:

> TAKE NOTICE THAT you are justly indebted to
> the Landlord of the above-described premises as set
> forth above which you are required to pay on or

---

[17]    The Debtor's counsel asserted, by affidavit, that all post-petition rent -- rent accruing after the
filing of the Debtor's chapter 7 case -- was paid in full, and while copies of post-petition checks
were introduced on the motion, the Court does not understand the Landlord necessarily to agree
that all amounts were so paid, and/or that the amounts so paid were the correct amounts.  Any
such disagreement, however, is not dispositive of the motion.  In this chapter 7 case, pre-petition
debts, and pre-petition debts only, were discharged; if and to the extent that the proper post-
petition rent was not fully paid, it would not be discharged, and its collection would not be barred
by the Discharge Order.

before the expiration of five (5) days from the day
of service of this Notice, or surrender up the
possession of said remise to the Landlord, in default
of which the Landlord will commence summary
proceedings under the Statute to recover the
possession thereof.

(Grimble Aff. Exh. G, third document).  It further stated:

> PLEASE TAKE NOTICE THAT A DISCHARGE
> IN BANKRUPTCY OF THE ACCRUED DEBT
> FOR RENT DOES NOT CONSTITUTE THE
> PAYMENT OF RENTAL, THE
> EXTINGUISHMENT, OR THE CANCELLATION
> OF THE DEBT.
>
> PLEASE TAKE FURTHER NOTICE THAT
> DESPITE THE DISCHARGE IN BANKRUPTCY,
> A LANDLORD CAN STILL AVAIL ITSELF OF
> ITS STATUTORY REMEDY TO RECOVER
> POSSESSION OF THE PREMISES FOR
> NONPAYMENT OF RENT.

(Id.) (capitals in original).

This Court further finds as a fact, or mixed question of fact and law -- based on its
analysis of the law of discharge, discussed below, and notwithstanding its conclusion
below that the Retroactive Rent was in fact discharged -- that these two statements were
true.  Indeed, they represent substantially verbatim quotations from the decisions in *In re
Hepburn*, 27 B.R. 135, 136 (Bankr. E.D.N.Y. 1983) (Goetz, J),[18] and *In re Touloumis*,
170 B.R. 825, 830 (Bankr. S.D.N.Y. 1994) (Bernstein, C.J.*)*, dealing with this exact issue.

The summary non-payment proceeding, commenced on or about April 19, 2000,
was filed with papers of the type used to commence a "special proceeding" under New
York law -- a "Notice of Petition" (analogous to a summons), and a "Petition" (analogous
to a complaint).  The Notice of Petition provided, in part, "PLEASE TAKE NOTICE

that the annexed petition…prays for a final judgment of eviction, awarding the petitioner [Landlord] possession of the premises."  (Grimble Aff. Exh. G, first document).  It went on to say, however:

> TAKE NOTICE also that *demand is made in the petition herein for judgment against you for the sum of $41,894.00* plus the costs and disbursements of this proceeding, and legal fees in an amount to be determined by the court.

(Id.) (capitals in original; italics added).

The accompanying petition made reference to rents due from the Debtor, in varying monthly amounts, over the period May 1993 through June 1999,[19] and characterized the 5-Day Notice that had previously been served, quoted in part above, as "requiring in the alternative the payment of said rent or the possession of the aforesaid premises."[20]  It went on to provide:

> WHEREFORE, Petitioner *requests that a final judgment be entered against respondent* [Debtor] *for the rent demanded herein*, further awarding possession of the premises to the petitioner-landlord, and directing the issuance of a warrant of eviction to remove the respondent(s) from the possession of the premises together with costs and disbursements of this proceeding.

Id.  (italics added).

The Debtor filed a pro se answer asserting bankruptcy discharge as a defense.  He later obtained counsel to represent him in that proceeding.

---

[18]     As noted at n.40 below, this Court would not necessarily agree with other language in *Hepburn*, but it is in agreement with the quoted language.

[19]     Grimble Aff. Exh. G, second document, at ¶ 7.

[20]     *Id.* ¶ 10.

The Debtor moved for summary judgment to dismiss the non-payment summary proceeding. The Landlord opposed and cross-moved for summary judgment (or in the alternative, for partial summary judgment) dismissing the Debtor's defense of discharge in bankruptcy.

The motions spawned two decisions by the Housing Court. In the first decision (which, with due respect, was based upon a faulty analysis and application of bankruptcy law, as discussed below), the Housing Court concluded, relying upon section 365(d)(1) of the Code, quoted below (providing in substance for a "deemed rejection" of an executory contract or unexpired lease of residential real property, in a case under chapter 7 of the Code, when the chapter 7 trustee neither assumes nor rejects that contract or lease within 60 days of the bankruptcy filing), that the DHCR Determined Rent was an exception to the Debtor's pre-petition debts that were discharged. Based on the undisputed fact that the chapter 7 trustee in the Debtor's bankruptcy case had taken no action with respect to the Debtor's occupancy during the 60-day period, and thus that there would be such a "deemed rejection," the Housing Court concluded, without citation of authority for this proposition, that:

> Here, because the lease [[21]] was rejected by the
> trustee, the rights and liabilities thereto never

---

[21] The Housing Court assumed without discussion that there was a lease to assume or reject, a matter meriting brief discussion. It appears from the DHCR Decision, and no evidence was introduced before this Court to the contrary, that the last lease between the Debtor and Landlord expired on April 30, 1988, 12-1/2 years ago. Authority in this District had observed that since rent controlled tenants were statutory tenants who did not have current leases, the applicability of section 365 to their tenancies was suspect, s*ee In re Friarton Estates Corp*., 65 B.R. 586, 592 (Bankr. S.D.N.Y. 1986) (Abram (Beatty), J.), though the *Friarton Estates* decision ultimately did not turn on this conclusion, since it noted that even if section 365 did apply, it could not be used by a landlord to oust rent controlled tenants by reason of the limitations on landlord rejections under section 365(h). *See id*. at 593. After *Friarton Estates*, however, the Second Circuit ruled in *Diamond I*, *supra*, 18 F.3d at 121 (adhering to this ruling in *Diamond II, supra*, 43 F.3d at 672), that the occupancies of tenants under each of rent control and rent stabilization, even after the expiration of their last executed leases, were "contract-based leaseholds," having sufficient roots in contract to make them capable of rejection under a provision of The Financial Institutions Reform, Recovery,

> became part of the estate in bankruptcy and
> respondent's alleged debt to petitioner was not
> discharged.

(Grimble Aff. Exh. I at 5.)

The Housing Court thus determined that the Debtor's "defense of discharge in bankruptcy is . . . without merit" and granted the Landlord's motion for summary judgment to the extent of striking the defense of discharge in bankruptcy.

The Debtor moved to reargue. The Housing Court described the Debtor's points on reargument:

> [A]ll debts incurred prior to the filing of a
> bankruptcy are discharged; the only exceptions are
> those provided by statute, specifically 11 U.S.C.
> § 523. According to respondent [Debtor], because
> none of those exceptions to discharge apply here,
> his debt for nonpayment of rent has been
> discharged.

(Reargument Decision, Grimble Aff. Exh. J, at 2.) The Housing Court responded, however, by saying that "[t]his argument overlooks the specific requirements imposed by law on the trustee in bankruptcy" -- referring to Code section 365(d)(1). On the apparent basis that a deemed rejection, at least on these facts, would result in an abandonment of the lease to the Debtor (which is true), the Housing Court then linked that fact (once more without supporting authority) to the matter of discharge:

---

and Enforcement Act of 1989 (FIRREA) analogous to section 365. That, in this Court's view, makes it fairly clear that under the current state of the law, the Debtor's tenancy -- determined by the DHCR to be under "rent stabilization," but lacking a current lease -- nevertheless would be capable of a "deemed rejection" under section 365(d)(1). *See In re Yasin*, 179 B.R. 43, 49 (Bankr. S.D.N.Y. 1995) (Bernstein, C.J.) ("The Second Circuit's decisions in *Diamond I* and *Diamond II* foreclose the claim that rent stabilized leases are not leases (or contracts) within the meaning of federal law, and hence, 11 U.S.C. § 365.").

Accordingly, this Court does not disagree with the Housing Court's assumption. However, for the reasons discussed below, this Court believes that whether the Debtor's lease was deemed rejected under section 365(d)(1) is not relevant to the discharge issue.

> Consequently, the lease never became part of the
> estate in bankruptcy and the debt could not have
> been discharged.

*Id.*

The Housing Court thus stated that it "adheres to its original decision." *Id*. at 4. The Debtor duly appealed the decision to the Appellate Term, First Department, where it is presently pending.[22] He thereafter sought relief here.

For reasons described below, this Court finds as conclusions of law, or as mixed questions of fact and law, that the Retroactive Rent was, in fact, discharged; that the Debtor does not have to pay it if he does not want to (though this may have consequences, under state law, which the state courts are free to determine); and that efforts to collect that debt, and/or to obtain a judgment for it, are violative of the injunction under section 524(a)(2) of the Code and the Discharge Order. It thus is appropriate to consider the facts underlying the Debtor's request for contempt.

Plainly the Landlord was aware of the discharge -- having made express reference to it in the 5-Day Notice. And the italicized language in the Landlord's papers (in the Court's view, possibly at some variance from the Debtor's,[23] the language in the Notice of Petition and the "Wherefore" clause in the Petition, but not the language in the 5-Day Notice) can fairly be read as stating not only that a debt to the Landlord is still due and

---

[22]    When this matter was submitted, counsel for the Debtor and Landlord agreed jointly to advise the state courts that this matter was brought here and is sub judice, and correspondence implementing that undertaking has been provided to this Court.

[23]    *See* Grimble Aff. ¶ 29 ("We ask the Court to note that the predicate notice for the non-payment petition clearly asks for payment of the discharged debt, not just possession of the premises."). While it is possible that the Debtor was referring to the Notice of Petition, the Court understood the "predicate notice" to be the 5-Day Notice. If the Debtor was referring to the 5-Day Notice, the Court disagrees; it reads the 5-Day Notice as saying that the debt exists, but without demanding payment -- noting only that if payment is not made, possession of the Apartment must be surrendered.

that the Landlord seeks possession, but also that the Landlord is seeking a money judgment for that debt.

However, taking the Landlord's litigation papers as a whole, and based on the total record before it,[24] the Court believes, and finds, that the Landlord's papers and conduct (as evidenced most significantly by the additions -- accurate ones -- to the 5-Day Notice) reflect a good-faith effort by an attorney to reconcile the Debtor's right to claim a discharge of the Retroactive Rent with the rights of the Landlord to recover possession of the Apartment as a consequence of the Debtor's availing himself of the discharge. While the Court finds below, as a conclusion of law, that the Landlord's efforts in this regard crossed the line and were nevertheless violative of the discharge, the Court further finds, as facts, that the Landlord's actions evidenced an effort to ascertain and comply with the applicable law; were technical and unintended violations of the Debtor's rights; did not evidence malevolent intent or bad faith on the part of the Landlord; and were not malicious or egregious.

Discussion

I.

"Res Judicata" and Related Preclusionary Doctrines

Although the Landlord speaks of "res judicata" as the bar to this Court's ability to determine the discharge issue, it is appropriate to consider all of the potentially applicable preclusionary rules and jurisdictional bars that might apply to prevent this Court from considering the very issue necessary to granting the requested relief. Three such doctrines are arguably relevant.

First, the doctrine of res judicata, or claim preclusion, prohibits litigation of any claim that was available to a party in a prior proceeding, whether or not the judgment actually determined that ground or claim. *See In re Kressner,* 155 B.R. 68, 72 (Bankr. S.D.N.Y. 1993) (holding that res judicata did not preclude debtor from bringing a claim under section 523(a)(2)(A) because it could not have been raised in the earlier state court action). Res judicata applies when there is a final judgment on the merits, rendered by a court of competent jurisdiction, based on the same cause of action as the action presently pending before the court, and involving the same parties.[25] *See id.* Res judicata rests on the premise that federal courts must give the same full faith and credit to a state court decision as courts within that state would give the decision. *See Manhattan King David Rest., Inc. v. Levine,* 154 B.R. 423, 427 (S.D.N.Y. 1993) (noting the full faith and credit rationale and citing 28 U.S.C. § 1768).

Thus, in general, because a judgment of the Civil Court is given res judicata effect by New York state courts, it must also be given that effect by federal courts. *See id.* The reverse, however, is also true. "The doctrine of res judicata applies with equal force to final judgments rendered by the bankruptcy courts and thus precludes relitigation in another bankruptcy proceeding and in other proceedings before Federal and State Courts." *Airline Pilots Intl. v. Continental Airlines, Inc. (In re Continental Airlines, Inc.),*

---

[24]     The Court's conclusions in this regard were reinforced by its observations at the hearing on this motion as to the Landlord's counsel's demeanor and sincerity, and her statements at the hearing as to her efforts to grope with the nuances in the law with which she was presented.

[25]     The Landlord argued in her papers that res judicata barred the bankruptcy court from revisiting the state court decision. (*See* Affidavit in Opposition to Motion for Contempt and Other Ancillary Relief ¶ 7). At the hearing, however, she couched this argument in collateral estoppel language; i.e., she argued that the state court had already decided the discharge "issue". The Second Circuit has noted that certain commentators use the phrase res judicata to refer to both claim preclusion and issue preclusion. *See Moccio v. New York State Office of Court Administration*, 95 F.3d 195, 199, n.1 *(citing* 18 Wright, Miller & Cooper, *Federal Practice & Procedure* § 4402 at 6*).* This Court will adhere to the traditional use of the terms and address both doctrines individually.

145 B.R. 404, 409 (D.Del. 1992) (when a bankruptcy court order decides a federal question, that order is given preclusive effect in state court). The *Continental Airlines* court cited the seminal decision of the United States Supreme Court in *Stoll v. Gottlieb*, 305 U.S. 165, 170-72, 59 S.Ct. 134, 137-38 (1938) (where a judgment or decree of a federal court determined a right under a federal statute, that decision was "final until reversed in an appellate court, or modified or set aside in the court of its rendition"; a bankruptcy court's order was thus res judicata and not subject to collateral attack in a subsequent state court action).

Second, the related but narrower doctrine of collateral estoppel, or issue preclusion, prohibits review of an issue when (1) the issue in question was actually and necessarily decided in a prior proceeding, and (2) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the first proceeding. *See Moccio v. New York State Office of Court Administration*, 95 F.3d 195, 200 (2d Cir. 1996) (setting forth the requirements for collateral estoppel). Collateral estoppel may be applied only to the issues of fact underlying the judgment, not to issues of law. *See In re Krautheimer,* 210 B.R. 37, 49 (Bankr. S.D.N.Y. 1997) (applying collateral estoppel where issue was whether debtor acted willfully and maliciously). Arguably, because the Housing Court's decision presents a legal issue, collateral estoppel would not apply. This Court does not have to reach this issue, however, because for the reasons stated below, no preclusionary bar applies in this case.

A third limit (not addressed by either party in the briefing on this motion) is a jurisdictional one found in the *Rooker-Feldman* doctrine, named after two Supreme Court decisions, *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S.Ct. 149 (1923), and *District of*

*Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303 (1983).[26]  It

operates generally as a bar on federal courts reviewing state court decisions; it provides

that lower federal courts lack subject matter jurisdiction over a case if the exercise of

jurisdiction over that case would reverse or modify a state court judgment.  *See*

*Hachamovitch v. DeBuono,* 159 F.3d 687, 693 (2d Cir. 1998) (finding that if the federal

court ruled in appellant's favor, it would not overrule any action already taken by the

administrative judge and state court).  As Judge Gonzalez of this Court noted recently in

*In re Cruz, supra,* 254 B.R. 801, 805 n.5 (Bankr. S.D.N.Y. 2000), the *Rooker-Feldman*

doctrine in a bankruptcy case is implicated when a bankruptcy issue is raised in the state

court, and, thereafter (either before or after the state court has determined the matter), the

same issue is raised in the Bankruptcy Court.  *Rooker-Feldman* may be raised at any time

by the parties or sua sponte by the court.  *See id.*.

However, as noted in *Cruz,* there is an exception to the application of *Rooker-*

*Feldman*.  It exists when the state court judgment is void, which, as noted below, is the

case when a judgment is entered either before or after the claim underlying the judgment

is discharged.  *See Cruz*, 254 B.R. at 805 (*Rooker-Feldman* and other preclusionary

doctrines would not be applicable if Code section 524 voided judgment that was

determination of the personal liability of the debtor with respect to a discharged debt); *In*

*re Pavelich*, 229 B.R. 777 (B.A.P. 9th Cir. 1999) (bankruptcy court can override state

court judgment to the extent the state court construes the bankruptcy discharge

incorrectly, because such judgment is void ab initio under section 524(a)(1)); 4 *Collier on*

---

[26]     In *Rooker*, the Supreme Court held that federal jurisdiction over direct appeals from state courts
would lie exclusively in the Supreme Court.  Thereafter, in *Feldman*, the Supreme Court expanded
the doctrine to bar federal jurisdiction over particular claims that are "inextricably intertwined

*Bankruptc*y ¶ 524.02[1] at 524-13 ("[a] bankruptcy court can find that a postpetition state

court judgment is void despite the full faith and credit normally given to state court

judgments"). The rationale for the exception, in part, is that because a void judgment is

null, vacating such a judgment is a mere formality and does not intrude upon the notion

of mutual respect in federal-state interests. *See Pavelich,* 229 B.R. at 783 (*citing In re*

*James*, 940 F.2d 46, 52 (3d Cir 1991)).

Bankruptcy Code section 524(a) sets forth the effect of a discharge in bankruptcy.

It provides in relevant part that:

> A discharge in a case under this title:
>
> > (1) voids any judgment *at any time obtained*, to the
> > extent that such judgment is a determination of the
> > personal liability of the debtor with respect to any
> > debt discharged under section 727 . . . of this title,
> > whether or not discharge of such debt is waived;
> >
> > (2) operates as an injunction against the
> > commencement or continuation of an action, the
> > employment of process, or an act, to collect, recover
> > or offset any such debt as a personal liability of the
> > debtor, whether or not discharge of such debt is
> > waived . . .

(emphasis added).

By its plain terms, section 524(a) applies not just to judgments obtained before the

entry of the discharge order; it also applies to any obtained thereafter. In this way, the

Discharge Order has both retroactive and prospective effects on creditors' attempts to

seek payment of discharged debts. Not only is any judgment obtained by the creditor

before the entry of the discharge order (usually one obtained pre-petition, since given the

---

with those a state court has already decided." Together, the decisions gave rise to the *Rooker-Feldman* doctrine, placing limits on federal courts' subject matter jurisdiction.

automatic stay, judgments on pre-petition debts would rarely be entered after the petition's filing) void; so is any judgment obtained after entry of the discharge order.

In *Cruz,* the debtor received his discharge. Thereafter, a default judgment was entered in state court against the debtor for a pre-petition car loan debt. The *Cruz* court found that because section 524(a)(1) operated as an injunction on any attempts to collect on discharged pre-petition debts, the default judgment was void as a matter of law. *See Cruz*, 254 B.R. at 812-813. Thus, it had no preclusive effect in bankruptcy court. The debt was indeed discharged, and the creditor was enjoined from seeking its payment.

Accordingly, if the Retroactive Rent was indeed discharged under the Discharge Order, any judgment of the Housing Court enforcing an effort to collect that discharged debt (and, most obviously, subjecting the order to collateral attack), would be void under section 524(a)(1) to the extent that it offends the discharge -- *i.e.*, to the extent it construed the discharge incorrectly. *See Cruz*, 254 B.R. at 811; *Pavelich,* 229 B.R. at 782-83.

As the Bankruptcy Appellate Panel for the Ninth Circuit held in *Pavelich*, reversing a bankruptcy judge who had declined to grant relief by reason of *Rooker-Feldman*:

> The key question is whether the bankruptcy court can enforce the discharge in the face of a contrary state court judgment. It can.
>
> …
>
> By federal statute, any judgment of any court that does not honor the bankruptcy discharge is "void" to that extent.

229 B.R. at 781.[27]

The *Pavelich* court further held, with respect to the effect of section 524(a)(1):

> One consequence is that a federal court need not give full faith and credit to state court judgments to the extent that they are void under § 524(a)(1)….
>
> Thus, when the bankruptcy court was presented with a request to consider whether it should entertain an injunction to enforce the discharge, it should not have taken the position that it could not examine the state court judgment.

*Id.* at 782.[28]

And that conclusion is applicable here even though the Debtor evidently litigated

fairly extensively in the Housing Court in his unsuccessful effort to convince the Housing

Court that the discharge applied. As Judge Gonzalez of this Court put it in *Cruz*:

> The plain language of § 524(a)(1) provides that any judgment is void if it is a determination of the personal liability of the debtor with respect to a discharged debt. Nothing in § 524(a)(1) distinguishes the type of judgment subject to the provision. Nor does the section lead one to conclude that the level of participation by the debtor

---

[27] It noted, in this connection, that section 524(a) was derived from a section of the former Bankruptcy Act that had been added in 1970 "to correct a perceived abuse arising from the former status of a bankruptcy discharge as merely creating an affirmative defense that was waived if not affirmatively pleaded and proved in postbankruptcy litigation." *Id.*

[28] The Ninth Circuit BAP noted, in this connection, that:

> The issuance of the bankruptcy discharge is a matter within exclusive federal jurisdiction. A state court that does not honor a bankruptcy discharge is, in effect, not honoring a federal judgment. And a "Congressional grant of exclusive jurisdiction to the federal courts includes the implied power to protect that grant."

*Id.* at 783. It continued:

> The bankruptcy court erred when it ruled that the Rooker-Feldman doctrine stripped it of jurisdiction to consider whether the state court's judgment was void ab initio and whether the discharge injunction had been violated.

*Id.*

> in a state court should be considered in the
> application of the section.

254 B.R. at 810.[29]

This has two consequences. *See Pavelich,* 229 B.R. 782. First, this Court does not have to give full faith and credit to the decision. *See id.* Second, the Housing Court decision is subject to collateral attack in this Court. *See id.*[30]

Thus, this Court may consider whether the DHCR Debt was discharged and the effect of that discharge on the future of the Landlord's pending nonpayment proceeding. If it finds that the Debtor was in fact discharged, this Court can enforce the discharge in the face of the contrary state court decision.[31]

---

[29] While this Court reads section 524(a)(1) the same way, it notes that it is not called on to decide now, and does not decide now, if there are any limits to this -- if, e.g., the Debtor had fully litigated the issue on appeal in the Appellate Term, Appellate Division or Court of Appeals, and only then came to the bankruptcy court for relief. That issue can be dealt with if and when it arises.

[30] While the above cases are directly on point, they are not the only authority arguably relevant to this issue. There are decisions that hold or might be deemed to hold to the contrary: *In re Singleton*, 230 B.R. 533 (B.A.P. 6th Cir. 1999) (state court determination that bankruptcy order staying sale of debtor's personal property did not apply to other property of the debtor was not subject to collateral attack by a federal court because no exception to *Rooker-Feldman* applied); *Ferren v. Searcy Winnelson Co. (In re Ferren),* 203 F.3d 559 (8th Cir. 2000) (per curiam) (relying on *Singleton* and rejecting *Pavelich* without identifying any ways in which the *Pavelich* analysis was deficient, and then holding no exception *to Rooker-Feldman* existed to permit the bankruptcy court to revisit a lien-discharge argument already decided by the state court). In another decision, *In re Schneider*, 126 B.R. 626 (Bankr. M.D. Fla. 1991), the court, under closely similar facts (in which a former debtor had litigated on the merits in state court defending a suit on a discharged debt; lost in the state court, and took an appeal; then sought to reopen his case in the Bankruptcy Court, while the appeal was pending, to enforce the discharge; to which discharge, the *Schneider* court concluded, the debtor would have been entitled on the merits), denied relief to the former debtor on collateral estoppel grounds, telling the former debtor that his remedy was in a state court appeal. (It should be noted, however, that the *Schneider* court did not consider, so far as this Court can determine, the effect of section 524(a)(1)).

In this Court's view, *Cruz* and *Pavelich* are better reasoned. Even if the matter were close (which this Court does not believe it is), where, as here, there is no controlling Second Circuit authority, this Court follows the decisions of other Bankruptcy Judges in the Southern District of New York, at least in the absence of clear error.

[31] This Court recognizes that the reasoning of the courts (including this one) holding state court judgments void under section 524(a), and thus not considering themselves bound by contrary decisions of state courts, could be said to be somewhat circular -- with the federal bankruptcy court's right to second-guess the state court decision turning on the outcome of the federal

## Construction of Discharge Order and Section 524(a)

This Court having concluded that it is not bound by the Housing Court's determination, it then turns to the requested clarification of the Discharge Order, and, in particular, the Debtor's contention that this debt, like any other pre-petition debt, was in fact discharged.

A. Nature and Scope of Discharge

The Debtor's discharge, in this chapter 7 case, resulted from section 727 of the Code.[32]  Section 727(a) provides that the Bankruptcy Court "shall" grant the debtor a discharge, unless one or more of ten disqualifying conditions appears.  Implementing that, Fed.R.Bankr.P. 4004(c)(1) provides that in a chapter 7 case, on expiration of the

---

bankruptcy court's second-guessing.  Nevertheless, in this Court's view, that is what section 524(a)(1), by its plain language, requires, as do *Cruz* and *Pavelich,* each of which hold that section 524(a)(1) operates to void the state court judgment to the extent that the Bankruptcy Court concludes, after the entry of a state court judgment, that the state court has construed the bankruptcy discharge incorrectly.  Though not in these words, the arguable circularity was addressed, to a certain extent, in *Pavelich*:

> With respect to the discharge itself, state courts have the power to construe the discharge and determine whether a particular debt is or is not within the discharge.  Indeed, discharge in bankruptcy is a recognized defense under state law. …

> But since 1970 the state court's power has been subject to the unusual limitation that stems from statutory voidness which now appears at § 524(a)(1).  While the power to decide an issue ordinarily connotes the power to decide it incorrectly, with any erroneous result being enforceable unless corrected on appeal, § 524(a)(1) statutory voidness commands a different result.

> If the state court construes the discharge correctly, its judgment will be enforced and not be vulnerable to being upset by means outside the normal appellate channels.  If, however, the state court construes the discharge incorrectly, then its judgment may be void to the extent it offends the discharge and subject to collateral attack in federal court.

*Id*. at 783.

time fixed for filing a complaint objecting to discharge and the time fixed for filing a motion to dismiss the case for substantial abuse (in each case 60 days after the first date set for the meeting of creditors under section 341(a) of the Code, or as that date may be extended, for cause), "the court shall forthwith grant the discharge" unless one or more circumstances enumerated in Rule 4004(c)(1) is present.

Section 727(b) of the Code, the provision most relevant here, sets forth the nature and extent of the discharge in a chapter 7 case. It provides, in relevant part:

> Except as provided in section 523 of [the Bankruptcy Code], a discharge under subsection (a) of this section discharges the debtor from all debts that arose before the date of the order for relief under this chapter… whether or not a proof of claim based on any such debt or liability is filed under section 501 of this title, and whether or not a claim based on such debt or liability is allowed under section 502 of this title.

The Landlord has not argued here, nor could she, that she did not have a claim, during the pendency of the Debtor's bankruptcy, for the $42,000 in Retroactive Rent. That was both a "claim," within the Code's definition of claims, section 101(a)(5),[33] and a claim that would be discharged whether or not a proof of claim had been filed with respect to it, Bankruptcy Code section 727(b),[34] and whether or not it ultimately had been allowed. *Id.*[35]

---

[32]     Other provisions deal with the grant of the discharge under other chapters. *See* Bankruptcy Code sections 944(b) (chapter 9); 1141(d) (chapter 11); 1228 (chapter 12); 1328 (chapter 13).

[33]     That section provides, in relevant part:

> "[C]laim" means --
>
>> (A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured….

[34]     "…whether or not a proof of claim based on any such debt or liability is filed under section 501 of this title…." As noted above, this was a no-asset case, for which, so long as it stayed that way, a

Thus, section 727(b) provides that a discharge releases the debtor from personal liability for all debts except those that are not dischargeable under section 523. If the debt is not explicitly listed as an exception under 523, it is discharged as a matter of law upon the entry of the Discharge Order. *See Cruz*, 254 B.R. at 810 & n.11.

B. The Housing Court's Analysis

While not bound by the Housing Court's conclusion, this Court, needless to say, thought it fully appropriate, and indeed essential, to review the Housing Court's decision for its analysis of the issues. However, having done so, this Court is constrained to conclude that the Housing Court erred, in material respects, in its understanding of the federal bankruptcy law regarding claims and discharge.

After discussion of matters not germane to discharge,[36] the Housing Court started its analysis with a reference to Bankruptcy Code section 365(d)(1). That provision provides, in relevant part:

> In a case under chapter 7 of this title, if the trustee does not assume or reject an executory contract or unexpired lease of residential real property or of

---

filing of a proof of claim, by the Landlord or any other creditor, would be a meaningless act. That would not, however, make the claim any less dischargeable.

[35] "…and whether or not a claim based on any such debt or liability is allowed under section 502 of this title…."

As it happens, on this state of the record (where the DHCR had ruled adversely to the Debtor, and where the Debtor had lost in his proceeding for Article 78 review), the Landlord's claim necessarily would have been allowed, because under familiar principles of res judicata, discussed above, the Debtor could not collaterally attack the pre-petition adverse decision in the Bankruptcy Court. *See, e.g., Teachers Insurance & Annuity Association v. Butler*, 803 F.2d 61, 66 (2d Cir. 1986) (bankruptcy court would be required to give full faith and credit to earlier federal district court judgment against debtor in action for breach of loan commitment agreement)

[36] The Housing Court started with observations that a bankruptcy trustee may assume an unexpired lease only if it is property of the estate, and that it is such if a debtor is the lessee of the property at the time the bankruptcy petition is filed. These statements are true, but do not go to the discharge issue, and, in particular, whether the "deemed rejection" of a lease under section 365(d)(1) exempts any claims said to arise under the lease from the general rule that any and all prepetition debts are discharged.

> personal property of the debtor within 60 days after
> the order for relief, or within such additional time as
> the court, for cause, within such 60-day period
> fixes, then such contract or lease is deemed rejected.

Bankruptcy Code section 365(d)(1), 11 U.S.C. § 365(d)(1).

And the Housing Court properly concluded, from its reading of that statutory

provision, that:

> In a Chapter 7 bankruptcy such as this, a trustee is
> deemed to have rejected contracts and leases of
> residential property that are not assumed within
> sixty days of the order for relief.  11 U.S.C.
> 365(d)(1).  Here the trustee must be deemed to have
> rejected respondent's lease.

(Housing Ct. Op. at 4).

But the Housing Court then jumped (without reference to section 727 or

interpretive caselaw; the caselaw on the issue of "deemed rejection" by reason of Code

section 365(d)(1); or any other caselaw) to a conclusion that:

> Here, because the lease was rejected by the trustee,
> the rights and liabilities thereto never became part
> of the estate in bankruptcy, and respondent's
> [Tenant-Debtor's] alleged debt to petitioner
> [Landlord] was not discharged.  The defense of
> discharge in bankruptcy is, therefore, without merit.

(Id. at 5).[37]

---

[37]    In its decision on the Debtor's reargument motion, the Housing Court noted, citing *B.N. Realty Assoc. v. Lichtenstein*, 238 B.R. 249 (S.D.N.Y. 1999) (Sweet, D.J.), that the "deemed rejection" of a residential lease in a chapter 7 case would result in the abandonment of the lease as property of the estate, and that any property abandoned by the trustee would revert in title to the debtor. (*See* Housing Ct. Rehrg. Decision at 2).  This is true, for the reasons stated in *B.N. Realty,* and, more extensively, in other caselaw.  *See In re Couture*, 225 B.R. at 58, 63-64 (D.Vt. 1998); *In re Bacon*, 212 B.R. 66, 68 (Bankr. E.D.Pa. 1997); *Yasin*, 179 B.R. at 47 (in a chapter 13 case, explaining the chapter 7 rule, comparing and contrasting the chapter 13 mechanism); *Touloumis*, 170 B.R. at 828.

However, the Housing Court then went on, inexplicably, and once more without authority, to say that "the lease never became a part of the estate in bankruptcy and the debt could not have been discharged."  (Housing Ct. Op. at 5).  That is an unsupportable jump.  The discharge issue is determined not by whether the lease became or did not become "a part of the estate in bankruptcy."  The relevant issue is rather whether claims arising from the lease were pre-petition

-27-

With due respect, the Housing Court's conclusions in this regard were erroneous. Assuming (as this Court does), that the Debtor's status as a statutory tenant under New York state law warranted treatment as an executory contract, its rejection did not mean that debts associated with the Debtor's tenancy were not discharged. To the contrary, the Debtor's Retroactive Rent to the Landlord, like any and all of the Debtor's other pre-petition debts, was discharged.

As noted, section 727, quoted above, sets forth enumerated exceptions to the debts that are discharged upon an order of discharge (*i.e.*, those set forth under section 523); claims associated with leases, or the rejection of leases, are not among them. The Housing Court nevertheless engrafted upon section 727 an unenumerated exception. Again with due respect, that was error.

It appears that the Housing Court failed, in each of its original opinion and its opinion on reargument, to quote or otherwise address section 727(b), although in characterizing one of the Debtor's arguments, it made reference to an argument that seemingly was based on that provision. That is puzzling. It likewise is puzzling that a determination of exception from discharge was based on section 365, which is silent with respect to matters of discharge. As noted, the Housing Court cited no authority for its conclusion that there is a carve-out from the discharge in cases where there is a "deemed rejection" in a chapter 7 case resulting from the chapter 7 trustee's failure to assume the lease.

Caselaw dealing with the facts we have here -- a case under chapter 7, where the debtor occupied residential property under a lease or rent-regulated tenancy, and where

---

and thus subject to section 727(b) -- and, if so, whether they were within any of section 523's exceptions to discharge.

the chapter 7 trustee failed to either assume or reject the debtor's lease or the bundle of rights associated with the debtor's tenancy -- supports the Debtor's contention that the Retroactive Rent was in fact discharged. Helpful in this regard are cases in this District and elsewhere evidencing their respective court's understanding that notwithstanding deemed rejection and resulting abandonment, pre-petition rent debts associated with those leases would be discharged. *See Hepburn, supra*, 27 B.R. at 136; *In re Touloumis*, 170 B.R. 825 (Bankr. S.D.N.Y. 1994) (Bernstein, C.J.*); In re Bacon*, 212 B.R. 66 (Bankr. E.D. Pa. 1997); *In re Couture*, 225 B.R. 58 (D. Vt. 1998).

*Hepburn*, in the Eastern District of New York, was the first of them. As here, a debtor had filed a case under chapter 7 of the Code after having failed to pay material amounts of pre-petition rent. *See Hepburn*, 27 B.R. at 136. Also as here, the Chapter 7 trustee did not take action within section 365(d)(1)'s 60 day period, to assume or reject her lease. The *Hepburn* court nevertheless noted, three times, that the debtor's debt for the pre-petition rent was discharged. *See id*. at 136 ("[e]xcept that the debtor's discharge in bankruptcy absolves her of the debt for rent…"); *id*. ("[t]he discharge in bankruptcy of the accrued debt for rent does not constitute the payment of rental"); *id*. ("[d]espite the discharge, a landlord can still avail itself of its statutory remedy to recover possession of premises for nonpayment of rent").

In *Touloumis*, in this District, another case under chapter 7 wherein residential property of the debtor subject to section 365(d)(1) was the subject of the dispute, Judge Bernstein four times took into account the fact, as a predicate for addressing other, more litigable, matters, that pre-petition rent obligations would be discharged. *See Touloumis*, 170 B.R. at 830 ("The Debtor's second erroneous assumption in her opposition is that her

discharge permits her to remain in possession of the premises without paying the rent that accrued under the expired lease.); *id.* ("although the discharge prevents the landlord from getting a personal judgment against the Debtor for the unpaid, pre-petition rent…"); *id.* ("[d]espite the discharge…"); *id.* ("the Debtor's discharge does not prevent the landlord from evicting her…")

Although there was no explicit mention in the *Touloumis* decision itself as to whether the Chapter 7 trustee had assumed or rejected the Debtor's lease, the docket in that case reflects no such action. In that case too, then, there would have been the "deemed rejection" and resulting abandonment to the Debtor under section 365(d)(1), yet there was nevertheless the discharge of the unpaid pre-petition rent to which the *Touloumis* court repeatedly referred.

*Bacon*, also like this case, was a case filed under chapter 7 of the Code by a debtor with a large amount due in pre-petition rent, although the debtor in *Bacon*, unlike the Debtor here, also owed substantial sums in post-petition rent. *See Bacon*, 212 B.R. at 68. Also as here, the Chapter 7 trustee in debtor Bacon's case did not assume the lease pursuant to section 365(d)(1) within 60 days of her filing. *See id.* Though the debtor's lease was deemed rejected for that reason, *id.*, and would thus be abandoned back to the debtor, *id.* & n.3, the *Bacon* court nevertheless recognized that the pre-petition rent would be discharged. *See id.* at 69 (after the termination of the automatic stay which comes into place at the time of discharge under chapter 7, landlords can enforce their rights under the lease "other than the right to collect the discharged debt").

*Couture* too involved a case filed under chapter 7 by debtors owing sums of pre-petition rent; the now-familiar pattern of a failure by their Chapter 7 trustee to assume or

reject their lease within section 365(d)(1)'s 60 day period; and the resulting abandonment

of the lease to the debtor.  Citing, as part of its analysis, *Hepburn, Touloumis,* and *Bacon*

for various parts of its analysis, the *Couture* court held:

> The debtor is essentially placed in the same position
> that he would have been in absent the
> commencement of the bankruptcy case, except that
> payment of outstanding prepetition rent is stayed …
> and ultimately discharged.

225 B.R. at 64.  *See also id.* (after discharge and termination of the automatic stay,

landlords could enforce their rights under the lease "other than the right to collect the

discharged debt," citing *Bacon*); *id.* ("[e]xcept that the [chapter 7] debtor's discharge in

bankruptcy absolves her of the debt for rent…," citing *Touloumis*).  The *Couture* court

held in that connection:

> However,  [the landlord Housing Authority] could
> only proceed against the Coutures *in rem* for failure
> to make pre-petition payments of rent in arrears….
> Those arrears rental payments were dischargeable,
> and were ultimately discharged, by the Coutures'
> Chapter 7 filing.

Id. (italics in original).[38]

  For all of the foregoing reasons, the Retroactive Rent was, in fact, discharged.

The Debtor need not pay the Retroactive Rent if he does not want to.  For those reasons

too, the determination of the Housing Court is, respectfully, void, and, as such, the

Housing Court's determination contrary to this Court's analysis is not binding on this

Court, under res judicata, collateral estoppel, *Rooker-Feldman,* or otherwise.

---

[38] In none of these cases, this Court should emphasize, was whether or not there was a discharge litigated or ruled upon.  They are noted merely to show how other bankruptcy courts, like this one, view pre-petition rent debts as discharged, even in cases where the leases have been deemed rejected under Code section 365(d)(1).  So far as this Court has been able to determine, no bankruptcy court has ever ruled as did the Housing Court here, and this Court's research has revealed no other case in which a litigant even made the argument.

E.  What The Landlord May and May Not Do

Having concluded that there was in fact a discharge of the Retroactive Rent, this Court then provides the requested clarification of the Discharge Order.  Part of that is relatively straightforward; the remainder requires more discussion.

1.  Seeking and Obtaining Monetary Judgment Against The Debtor

The relatively straightforward part, of course, is that the Landlord cannot obtain a money judgment against the Debtor for the discharged Retroactive Rent.  Nor can she seek it.  If, though this Court is not convinced that this is the case, New York landlord-and-tenant procedural law is so inflexible as to require the Landlord to violate this prohibition in order to seek the *eviction* as a consequence of nonpayment that, as described below, is permissible as a matter of federal bankruptcy law,[39] this Court will consider entry of a supplemental order (settled on notice to all parties) to provide a safe harbor if the Landlord commits to proceed in a manner consistent with this opinion.

2.  The Landlord's Ability to Proceed In Rem and/or for Eviction

While, as just noted, the Retroactive Rent was discharged, and the Landlord thus cannot seek a monetary judgment for it, it is also important to note what the discharge did not do.  The Discharge Order's third decretal paragraph tracked section 524(a) of the Code.  Each enjoined the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset the discharged debt "*as a personal liability of the debtor*."  Section 524(a)(1); *accord* Discharge Order (¶ 3) ("*as personal liabilities of the Debtor(s)*") (emphasis added in each instance).

---

[39]    This Court adds "as a matter of federal bankruptcy law," because, as noted below, it is intentionally not deciding the issues of state law, and in particular, state landlord-tenant law.  The Court understands that the Debtor believes that once this Court makes clear that the Retroactive Rent has in fact been discharged, he has claims and/or defenses in his battle with the Landlord as matters of state landlord-tenant law.  This Court emphasizes that it is not ruling on them here.

Each of section 524(a) and the Discharge Order prohibited the Landlord's efforts to recover the obligation from the discharged debtor, but did not extinguish the underlying debt. As the court explained in *United States v. Alfano*, 34 F.Supp. 2d 827, 841 (E.D.N.Y. 1999):

> Part of the conceptual difficulty may arise from the interplay between a discharge of the debtor's debt and an extinguishment of the creditor's claim. The key point is that although a debtor's debt may be personally discharged in bankruptcy, the underlying debt is not extinguished.

By reason of that fundamental principle, the Landlord is free to observe, and to take action predicated on the fact, that the discharged DHCR Determined Rent has not been paid, and that the Debtor's rent debt to the Landlord has not been extinguished. A substantially identical observation was made by the court in *Hepburn*, supra, under facts very similar to those in our case. There, as noted above, a residential property tenant had filed for bankruptcy relief under chapter 7 of the Code when owing substantial sums in pre-petition rent to her landlord. There too the Chapter 7 trustee neither assumed nor rejected the lease, with the result that the lease was deemed rejected under section 365(d)(1). The debtor in *Hepburn* was discharged from the pre-petition rent (that apparently not even being an issue), but the *Hepburn* court then explicitly noted what that discharge did *not* do:

> The discharge in bankruptcy of the accrued debt for rent does not constitute the payment of rental. A discharge in bankruptcy does not constitute a payment, or extinguishment, or a cancellation of the debt.

27 B.R. at 136.

Another corollary of the principle that the underlying debt is not extinguished upon discharge is that, at least as a matter of federal bankruptcy law, the Landlord here is free to avail herself of the *consequences* of the nonpayment of the rental, and of the fact that the unpaid rent obligation was not extinguished, so long as she does not attempt to recover the unpaid rent. That too appears from caselaw closely on point, including law in this District.

Recognizing, as it did, that the underlying rent debt survived, and remained unpaid, the *Hepburn* court concluded:

> Except that the debtor's discharge in bankruptcy absolves her of the debt for rent, the landlord is entitled to whatever his remedies would be in the courts of New York State, absent bankruptcy, for breach of a lease. … Despite the discharge, a landlord can still avail itself of its statutory remedy to recover possession of premises for nonpayment of rent.
>
> …
>
> [The landlord] is now free to pursue its remedies in New York's housing court for [the debtor tenant's] breach of her obligation to pay rent….

*Id.* at 136-137.[40]

---

[40]  The *Hepburn* court continued with an observation with which this Court would not necessarily agree, though in part this Court's view arises from cases decided after *Hepburn*, and in any event, both the *Hepburn* court's observation and this court's disagreement are unnecessary to the disposition of the motion. In *Hepburn* (where, as noted above, the Chapter 7 trustee's failure to act resulted in a deemed rejection under Code section 365(d)(1), and the lease was deemed "breached" under section 365(g)), the court found that the landlord could seek eviction for nonpayment of rent, "reinforced by the breach arising from the trustee's rejection of her lease." 27 B.R. at 137. Cases decided after *Hepburn* have emphasized the need to distinguish between the *fact* of the breach resulting from deemed rejection under section 365(d)(1) and the *consequences* of that breach. State law determines the latter. *See Medical Malpractice Insurance Ass'n v. Hirsch (In re Lavigne)*, 114 F.3d 379, 387 (2d Cir. 1997) *(citing Yasin, supra*, 179 B.R. at 50) (because "rejection constitutes a statutory breach, but does not repudiate or terminate the lease . . . [t]he parties must … resort to state law to determine their rights as a result of the breach"). In this circuit, state law would determine whether the deemed breach by itself gives the landlord the right to evict, an issue of particular relevance where the rent continues to be paid.

*Touloumis,* authored by Chief Judge Bernstein of this Court, is also closely on point. There, as here, a tenant occupying a rent stabilized Apartment in New York became embroiled with her landlord in nonpayment summary proceedings in New York City Civil Court by reason of her failure to pay pre-petition rent. Before her scheduled eviction, she filed a chapter 7 case in the Bankruptcy Court here.

Although the *Touloumis* decision, as noted above, recognized no less than four times that the Debtor was discharged, it nevertheless underscores how, at least as a matter of federal bankruptcy law, the landlord can invoke remedies without violation of the discharge and/or federal bankruptcy law. The *Touloumis* court made it clear that the discharge did not prevent the landlord from seeking to recover possession as a consequence of the failure to pay the discharged pre-petition rent. As the *Touloumis* court held:

> The Debtor's second erroneous assumption in her opposition is that her discharge permits her to remain in possession of the premises without paying the rent that accrued under the expired lease. ... [A]lthough the discharge prevents the landlord from getting a personal judgment against the Debtor for the unpaid, pre-petition rent, it does not prevent the landlord from evicting the Debtor for its non-payment . . . .

170 B.R. at 830.

---

A similar, but arguably distinct approach (determining by itself that rejection would not result in termination, rather than leaving the determination to the state courts), was that taken by the court in *Couture, supra*, 225 B.R. at 64 (although section 365(g) provides that the rejection of a lease constitutes a breach, the breach does not terminate an unexpired lease; "[t]o so hold would be to find that a lease otherwise not in default under state law would be terminated by the trustee's failure to assume it."). But to whatever extent they themselves consider the state law, all of these cases are consistent in not taking it as a given that lease termination would flow from the deemed rejection.

Other courts have held similarly. In an early case under the Code, *In re Rush*, 9 B.R. 197 (Bankr. E.D. Pa. 1981), the debtor had argued that the landlord could not proceed against her to evict for failure to pay pre-petition rent dischargeable in her Chapter 7 case. Referring to section 524(a), the court rejected that argument:

> It is crystal clear from [that] language . . . that a discharge only prevents a creditor from proceeding against the debtor on the debt as a personal liability. … Here the discharge of the debtor will eliminate the debtor's personal liability for that debt but does not eliminate any of the other consequences of that debt. Therefore, since the failure to pay rent was a breach of the lease, we conclude that the landlord may pursue any remedy to which it is entitled under state law for that breach *except* a remedy against the debtor personally to collect the money due. Such action would not be contrary to the provisions of § 524(a) as stated above.

9 B.R. at 200 (italics in original). Thus, just as a mortgagee could foreclose on realty securing a discharged debt, the landlord could proceed in state court to recover premises leased by the debtor where the debtor was in pre-petition default in the payment of rent -- even though that pre-petition rent would be discharged. *See id*. at 201.

Quoting from *Rush* approvingly, the *Bacon* court summarized the *Rush* holding:

> Finding that the landlord did not seek to proceed against the debtor personally but rather to proceed in rem against the leased premises, the *Rush* Court found no violation of the discharge injunction of § 524(a) and granted the landlord's requested relief.

212 B.R. at 69.  The *Bacon* court held, as had the court in *Rush*, that "[t]he landlord may still proceed in rem against the leased premises."  *Id.*; *accord Couture*, 225 B.R. at 64 (same, citing *Bacon*).[41]

The *Touloumis* court concluded:

> [T]he Debtor's discharge does not prevent the
> landlord from evicting her for nonpayment of rent
> under that lease.

170 B.R. at 830.  This Court holds likewise.  So long as no money judgment is sought, this Court regards proceeding in rem against the Debtor's leasehold as no more inconsistent with a discharge than would be a mortgagee's proceeding against the Debtor's fee interest.  Though the Landlord cannot, consistent with the discharge, get a personal judgment against the Debtor for the Retroactive Rent, she can, consistent with the discharge, seek to evict the Debtor for its nonpayment.

## III.

## Contempt

Under Code section 524(a)(2), a discharge in a case under the Bankruptcy Code "operates as an injunction."  The Discharge Order imposed a similar injunction.  As Judge Gonzalez of this Court noted in *Cruz*, bankruptcy courts have found that violation of a section 524(a)(2) injunction is punishable by contempt.  *See Cruz*, 254 B.R. at 816 (citing several cases, and extensively discussing when sanctions for violation would, or

---

[41]   Some of the authority described above precedes the unanimous decision of the United States
Supreme Court in *Johnson v. Home State Bank*, 501 U.S. 78 , 111 S.Ct. 2150 (1991), and some
follows it, but all are consistent with it.  *Johnson* reiterated the long-standing principle that:

> [A] bankruptcy discharge extinguishes only one mode of
> enforcing a claim -- namely, an action against the debtor in
> personam -- while leaving intact another -- namely, an action
> against the debtor in rem.

501 U.S. at 84; 111 S.Ct. at 2154.

would not, be appropriate); *see also* 4 *Collier on Bankruptcy* ¶¶ 524.02[2], 524.02[2][c]. It is unnecessary, in this Court's view, to repeat the lengthy discussion of the law set out in *Cruz*; it is sufficient simply to observe that in this case, as in *Cruz* and the numerous other cases cited and discussed in *Cruz*, this "is not a case in which sanctions are appropriate." *Cruz*, 254 B.R. at 816.

This Court has found that section 524 and the Discharge Order were violated, but under circumstances where the Landlord had tried in good faith to walk the line between the permissible and the impermissible. This Court further found as facts that the Landlord's actions evidenced an effort to ascertain and comply with the applicable law; were technical and unintended violations of the Debtor's rights; did not evidence malevolent intent or bad faith on the part of the Landlord; and were not malicious or egregious. In declining to find contempt in the face of facts like these, the *Cruz* court was supported by substantial authority. *See, e.g., In re Bowling*, 116 B.R. 659, 664 (Bankr. S.D. Ind. 1990) (action of creditor had some colorable legal support; contempt sanctions not warranted: "Sanctions for contempt are not appropriate for technical and unintended violations of a debtor's rights."). Under these facts, as in *Bowling* and *Cruz*, 254 B.R. at 816, a finding of contempt would be inappropriate and unjust.

## IV.

### Damages, Legal Fees, and Costs

The contempt analysis also determines, in this Court's view, the Debtor's request for damages, legal fees and costs. Although attorneys fees have been awarded in bankruptcy cases within the Second Circuit for a violation of the section 524 injunction, *see Cruz*, 254 B.R. at 816; *In re Watkins*, 240 B.R. 668, 680 (Bankr. E.D.N.Y. 1999) (Eisenberg, J.), their award has been deemed appropriate (1) when a party willfully

disobeys a court order, and (2) when a party acts in bad faith, vexatiously, wantonly or for oppressive reasons. *Cruz*, 254 B.R. at 816; *Watkins*, 240 B.R. at 678. Neither is present here. Even assuming (without deciding) that willfully proceeding with knowledge of the Discharge Order should be deemed to satisfy the first requirement, the second requirement plainly has not been established. There was no evidence, much less a finding, of bad faith on the part of the Landlord here.

## V.

### Accounting

The analysis described above makes clear that while the Landlord can proceed in rem, she cannot require the payment of the discharged debt. Nor can she use self-help to recover it. If and to the extent that she applied post-petition rent payments to discharged pre-petition debt, that would be improper. However, the Debtor has merely stated that he wonders whether that is the case, and seeks an accounting to find out.

The Debtor's request is appropriate in principle, and will be granted but with a simplification. This Court believes that the formal mechanism of an accounting is unnecessary and burdensome as a means to answer that very discrete inquiry. The Court believes that counsel for the Debtor should first inquire by letter, and that counsel for the Landlord respond by letter. If that, contrary to the Court's expectation, is insufficient, the Court will authorize discovery under Fed.R.Bankr.P. 2004 to clarify the facts. If that too is insufficient, the formality of an accounting might then be justified, and the Court will consider such an application upon due notice to the Landlord.

## VI

## Further Proceedings

The Debtor asked this Court, in his seventh request for relief, for "such further relief as might be just to enforce the Discharge Order." More specifically, though he acknowledged that the issues related to his tenancy "are most likely properly resolved in State court" (Debtor Br. at 3), he urged the Court to consider them "for the sake of completeness and to understand the procedural posture of the case." (*Id.*)

Thus the Debtor led this Court to understand that he would like this Court to involve itself in the determination of the rights of the Debtor and the Landlord once the discharge issues were clarified -- articulated in his brief as "application of state law to the facts." (*Id.* at 6). This Court declines the suggestion. Having determined the issues properly before this Court -- construction of the Discharge Order and Bankruptcy Code section 524(a), the requests for contempt and sanctions, and the request for an accounting -- this Court believes that it should do no more.

Assuming that this Court has subject matter jurisdiction over the landlord-tenant issues between the Debtor and the Landlord -- a matter that is not free from doubt[42] -- the

---

[42] This Court's subject matter jurisdiction arises under 28 U.S.C. § 1334. That section provides that the district courts of the United States (and thus the Bankruptcy Courts), in addition to having original and exclusive jurisdiction of all cases under title 11 (i.e., cases under the Bankruptcy Code), have original but not exclusive jurisdiction of civil proceedings arising under title 11 or arising in or related to a case under title 11. This is arguably a matter "related to" a case under title 11, an area where the standard is a fairly broad one. *See, e.g., Publicker Indus., Inc. v. United States (In re Cuyahoga Equipment. Corp*.), 980 F.2d 110, 114 (2d Cir. 1992) (looking to whether the outcome of the proceeding "might have any conceivable effect" on the estate being administered in bankruptcy). But this matter's minimal effect on the estate and creditors, as contrasted to the Debtor himself, might put this case in the gray area. With the Chapter 7 trustee having understandably taken no action with respect to the Debtor's lease, and with the lease having been deemed abandoned back to the Debtor, an argument could be made that a necessary nexus to an effect upon the estate itself, and hence creditors, is lacking. This is an issue that the Court need not, and does not, decide.

Court chooses not to exercise it.  As 28 U.S.C. § 1334 authorizes it to do,[43] the Court

abstains.  Once the federal law defining the nature and scope of the discharge is clarified,

the state courts are better suited to determine the parties' rights and responsibilities

incident to the Debtor's continuing occupancy of the Apartment.  Just as this Court was

probably better suited to rule on the federal bankruptcy law issues involving the nature

and extent of discharge, this Court believes that the state courts are better suited to

determine, as one or more questions of state law, whether the Debtor may occupy the

Apartment if he pays only the rent accruing after his bankruptcy filing; whether there

was, as the Debtor has suggested, a post-bankruptcy filing novation with respect to his

tenancy, resulting from the acceptance of rent (see Debtor Br. at 6); and/or whether there

are other bases for a contention that he may continue in occupancy if he chooses (as his

right) not to pay the discharged Retroactive Rent.

     The New York state courts also are better suited than this Court to determine what

state court procedural vehicles are available to the Landlord to obtain any necessary

rulings, in light of this Court's ruling that while the Retroactive Rent was discharged, it

did not go away, and that the Landlord may, consistent with federal bankruptcy law,

proceed against the Debtor, in rem, so long as she does not try to collect the Retroactive

Rent.

     Possibly anticipating the way in which this Court would rule, the Debtor, in his

papers, and the Landlord, in oral argument, each addressed state court requirements for

---

[43]    28 U.S.C. § 1334(c)(1) provides, in relevant part:

> Nothing in this section prevents a district court [and hence the
> Bankruptcy Court] in the interest of justice, or in the interest
> of comity with State courts or respect for State law, from
> abstaining from hearing a particular proceeding … arising in
> or related to a case under title 11.

the maintenance of landlord-tenant summary proceedings that might create procedural

barriers to any of the Landlord's efforts to proceeding solely in rem, as this Court has

ruled she may do. Counsel for the Landlord mentioned these requirements at the hearing

on this motion as having affected the manner in which she drafted the 5-Day Notice, the

Notice of Petition and Petition,[44] and the Debtor raised these in the portion of his brief

under "application of state law to the facts." (Debtor's Br. at 6).

The determination of the availability of state law procedural vehicles to bring up

the remaining issues for determination is classically one for the state courts. This Court

believes it best to abstain in part based on its belief that if, as a matter of state law, the

Landlord has substantive rights with respect to the Debtor's non-payment of the DHCR

Determined Rent, the state courts will find an effective procedural mechanism for

vindicating them (or merely clarify what it is), especially if any underlying federal

bankruptcy law issues are clarified.[45] That is particularly so since (without purporting to

infringe upon the domain of the state courts in this regard) Rasch observes that originally

summary proceedings were proceedings in rem for the recovery of the possession of real

---

[44]    Counsel for the Landlord, whose 5-Day Notice, as previously noted, properly characterized the
law, articulated the dilemma she thought she faced. She regarded her only available procedural
vehicle to be a "non-payment" summary proceeding. *See* N.Y. Real Property Actions &
Proceedings Law ("RPAPL") § 711(2). The right to evict, she thought, required pleading a claim
for unpaid rent, even though the Landlord only wanted possession. She thought a summary
proceeding for possession referred to in New York practice as a "holdover proceeding," *see* NY
RPAPL § 711(1) -- a classic in rem type of proceeding -- would not lie where the essence of the
basis for eviction is not the continuation of possession after the expiration of the lease term, but
rather the non-payment of rent. This Court respected her sincerity in wrestling with these issues as
an important factor in its determination that her violation of the Discharge Order and section
524(a) was in good faith and not contemptuous.

[45]    A treatise in the landlord-tenant area, 2 Rasch, *New York Landlord & Tenant* (4th ed. 1998)
("Rasch"), states, with respect to the summary proceeding mechanism that had been used by the
Landlord (and that is the normal means by which landlords enforce their rights), that its purpose
was to afford a "simple, expeditious and inexpensive" means for the recovery of real property, as a
substitute for ejectment, "an expensive and dilatory [proceeding which in many instances
amounted] to a denial of justice." *Id.* at § 29:5 & notes 12-13 (*citing, e.g., Reich v. Cochran*,
201 N.Y. 450, 453-54, 94 N.E. 1080, 1081 (1911).

property, *id*. at § 29:6, and that New York's statutes were thereafter amended to permit a judgment also for rent due if the notice of petition contains a notice that a demand for such judgment has been made. *Id.*[46]

In his brief -- once more in the section dealing with "application of state law to the facts" -- the Debtor called this Court's attention to a decision of the Appellate Term, *Stahl Broadway Co. v. Haskins*, 180 Misc. 2d 705, 693 N.Y.S.2d 398 (App. Term, 1st Dept. 1999) (Debtor's Br. at 6); in oral argument, the Landlord also referred to this, as evidencing the dilemma with which she was faced. *Stahl Broadway* affirmed the dismissal of a nonpayment proceeding wherein the landlord sought a possessory judgment and warrant of eviction only, after rent arrears had been discharged in a bankruptcy. The *Stahl Broadway* court ruled that a summary proceeding could not be brought, as it believed that there was no valid basis to serve a rent demand pursuant to RPAPL 711(2) for arrears which had previously been discharged. *See Stahl Broadway*, 180 Misc. 2d at 706, 693 N.Y.S.2d at 398. It so ruled based on the state law principle that:

> At the time a summary proceeding for nonpayment of rent is commenced there must be rent in arrears which has not been paid (2 Rasch, New York Landlord and Tenant -- Summary Proceedings, 4th ed., § 32:8).

180 Misc. 2d at 706, 693 N.Y.S.2d at 398.

---

[46]     Rasch goes on to say that:

> Accordingly, a summary proceeding may now be either a solely possessory special proceeding, or a combination of action and special proceeding in which a money judgment can also be granted.

*Id.*

The New York courts can decide if the *Stahl Broadway* court would have ruled as it did (or if it would so rule again) if it had been shown that a premise upon which the *Stahl Broadway* court may have ruled was incorrect. This Court notes, in that regard (not by way of ruling on the state law issues, but only with respect to the federal bankruptcy law premise upon which the state law was applied), that even after a tenant's discharge, there *would* still be "rent in arrears which has not been paid," *id.*, for the reasons noted above.[47]

This Court assumes that there will be a viable and reasonably expeditious way for the Landlord and the Debtor to litigate the merits of the issues of the Debtor's continued right to occupancy if he chooses to avail himself of the discharge. If New York procedural law, by reason of *Stahl Broadway* or otherwise, is such that there is no such way for the New York courts to consider the merits of the Landlord-Debtor dispute consistent with what bankruptcy law permits and does not permit, this Court is prepared

---

[47]     Before adding the language tracking the decisions in *Hepburn* and *Touloumis*, which this Court has noted accurately states federal bankruptcy law, the 5-Day Notice that was served here said:

> TAKE NOTICE THAT you are justly indebted to the Landlord of the above-described premises as set forth above which you are required to pay on or before the expiration of five (5) days from the day of service of this Notice, or surrender up the possession of said premise to the Landlord, in default of which the Landlord will commence summary proceedings under the Statute to recover the possession thereof.

(Grimble Aff. Exh. G, third document). This language was evidently satisfactory as an RPAPL 711(2) notice when the Landlord and Debtor were before the Housing Court. While, as noted, this Court was troubled by language in the Landlord's Notice of Petition and Petition seeking a money judgment in addition to possession, it was not troubled by the language in the 5-Day Notice; this Court has ruled that the 5-Day Notice, especially when accompanied by the additional language the Landlord added, was not violative of the Discharge Order or section 524(a).

to consider entry of a further order so that its rulings are not a barrier to the state courts'

consideration of the merits. [48]

***

The foregoing constitutes this Court's findings of fact and conclusions of law on

the motion. The Discharge Order, and the applicability of Bankruptcy Code section

524(a) should be deemed clarified in accordance with this opinion, and the Debtor and

the Landlord are authorized to proceed in any manner not inconsistent with it.

SO ORDERED.

Dated: New York, New York
       January 4, 2001

*/s/ Robert E. Gerber*_____
United States Bankruptcy Judge

---

[48] This Court assumes that the Debtor advised this Court of *Stahl Broadway* incident to laying out the totality of the potentially applicable law, and not as the first step in a chess game. While the Court emphasizes that it has no basis for concluding that the Debtor is acting in anything other than good faith, if it turns out that the Debtor has created procedural barriers in the state courts impeding the state courts from reaching the issues as a consequence of this Court's ruling -- with the purpose or effect of a procedural checkmate -- the Landlord can come back to this Court for further clarifications and/or a safe harbor, so long as she commits to act consistently with this opinion.

As a matter of federal bankruptcy law, the Debtor is entitled to protection from a money judgment but no more than that. In *187 Concourse Assoc. v. Bunting*, 175 Misc.2d 870, 874, 670 N.Y.S.2d 686, 688-89 (Civ. Ct. Bronx Co. 1997), the court, upon thoughtful analysis of *Touloumis* and its progeny, appropriately concluded that while a nonpayment money judgment for a discharged rent obligation would be void under section 524(a), the possessory judgment resulting from nonpayment would not be.

Accordingly, to minimize the expense of litigation, and to avoid turning further litigation into such a chess game, this Court rules now that it will not consider the Landlord's actions to be violative of the Discharge Order or section 524(a) if (either by amendment to the Petition in her existing summary proceeding or in any newly commenced summary proceeding) she issues a clear, unequivocal, and irrevocable waiver of her right to a money judgment if she is required to ask for one and one is awarded. Needless to say, this Court will expect any such waiver by the Landlord to be honored, and will be available to provide relief -- including, without limitation, declaring another judgment void -- if it is not.

-45-